## Todd, *plaintiff in review, vs.* Darling.

A judgment against a trustee in the process of foreign attachment, is a collateral judgment incident to a suit at common law, and can be vacated or avoided only by the same process which would reverse the principal judgment.

The 14th *sec.* of the statute concerning foreign attachment, *ch.* 61, in which provision is made for enforcing the attachment against the estate of the trustee, if he die either before or after his examination, is not limited to cases where, at the death of the trustee, judgment had not been rendered against the principal defendant.

In *scire facias* against the administratrix of one, against whom judgment had been rendered as trustee, to enforce such judgment, the insolvency of the estate of the trustee is not pleadable in abatement; it not being an *original* action, but an incident to, and continuation of, the former suit.

In cases of insolvency and appointment of commissioners, the Judge of Probate is by law to allow " six months, and such further time, not exceeding eighteen months in the whole," to the creditors to bring in and prove their claims : — in this period of eighteen months, the time between the termination of one commission and the issuing of another, is not to be reckoned : — but the commission cannot be opened after the statute limitation of four years has attached.

This was a *writ of review* brought to reverse a judgment rendered in the Court of Common Pleas, *March* term, 1826, for $532 debt, and $32,65 costs, in favor of *Isaac Darling,* the present defendant, against *John C. Todd,* the plaintiff's intestate.

The original writ contained counts on four promissory notes for $200 each, dated *May* 13, 1820, and payable by said *Todd* to said *Darling,* and *not negotiable.* One payable on demand, the others, in one, two and three years from date, with interest. Judgment was rendered on the last two notes only, the other two not having been filed in the case. Execution had issued on said judgment and had been satisfied by a levy on the real estate of said *Todd* in his lifetime.

Said *Todd* died in the year 1827, having previously presented his petition for review, which was afterwards granted to his administratrix the present plaintiff, on the ground that her intestate had a defence to said action and had neglected to make it.

On the trial of the action upon the review, it appeared that prior to the commencement of the original suit by *Darling* against *Todd* the latter had been summoned as the trustee of *Darling*

in three suits, one in favor of *Ezekiel Foster*, another in favor of *Zebedee Cook*, and the third of *Samuel Darling*, in all of which, judgment had been rendered against said *Isaac Darling* as principal, and *Todd* as trustee.

In *Foster's* suit *Todd* had made a disclosure *before a justice of the peace*, there being no assent or dissent to such a course, on the part of *Darling*, the debtor; upon which disclosure the said *Todd* was adjudged trustee at the *September* term of the Court of Common Pleas, 1821, judgment being rendered at the same term against the principal for $505,77 debt and costs. Execution issued on said judgment and was paid in full by said *Todd*, *March* 15, 1822, with interest. This sum, therefore, the plaintiff in review claimed to have deducted from the amount of said notes sued. But *Darling* resisted it, on the ground that the act of *Todd* in making a disclosure before a Justice of the Peace was wholly unauthorised by law, or the agreement of the parties ; — and also on the ground that only two of said notes were due when said disclosure was made, or the judgment rendered — or at the time when the execution was paid, or was returnable — and that said *Todd* was not legally bound to pay over anything more on said execution than the amount which was then due and payable to said *Isaac Darling*.

But *Weston J.* intending to reserve this and other questions in the case, ruled that the plaintiff in review was entitled to have the whole sum set off.

The administratrix further offered in evidence two judgments, one in favor of *Zebedee Cook*, and the other in favor of *Samuel Darling*, both against *Isaac Darling* as principal, and *Todd* as trustee, rendered at the *September* term of the Court of Common Pleas, 1821 ; in both of which *Todd* was defaulted. The first was for $39,20, the other for $99,09. — Also judgments in favor of the said *Cook* and *Samuel Darling*, rendered in the Court of Common Pleas, *September* term, 1832, on *scire facias*, against the administratrix founded on the two judgments aforesaid; in which *scire facias* suits the administratrix was defaulted. These also she claimed to have deducted from the amount of said *Isaac Darling's* claim against her intestate.

In regard to these claims, it appeared further, that, administra-

tion on *J. C. Todd's* estate was granted to the plaintiff in review, and she accepted the trust *July* 15, 1828, but did not give notice thereof until more than seven months afterward. On the 9th of *January*, 1829, the Judge of Probate appointed commissioners of insolvency, by his warrant returnable in six months, who at the expiration of that time returned the same, certifying that there were but two claims presented, and none allowed.

The inventory of *Todd's* estate was as follows, viz.: Real estate, $500 — personal estate, $213,39 — debts due, $229,75.

It did not appear that any account had ever been settled in the Probate Office.

On the 11th of *July*, 1832, the Judge of Probate, on the petition of *Zebedee Cook*, opened the commission again, and allowed two months further for said *Cook* to present and prove his claim. On the 3d *Tuesday* of *October*, 1832, the commissioners again made return of claims presented, and their doings thereon, allowing to *Zebedee Cook*, $64,67; and to *Samuel Darling* $163,49, being the amount of the judgments aforesaid, and interest thereon. To the allowance of these claims the administratrix made no objection before the commissioners.

The deduction of these judgments from the amount of his claims, *Darling* the defendant objected to, but the Court permitted it, and the jury returned their verdict accordingly; which was to stand or be set aside, as the opinion of the whole Court should be, upon the correctness of the ruling of the Judge who presided at the trial.

*Allen*, for the plaintiff.

The judgment obtained against *Todd* as trustee at the suit of *Foster*; is not binding upon the defendant *Darling*. It was rendered upon a disclosure not made according to law. The statute authorizing disclosures to be made before Justices of the Peace was not enacted until nearly nine years afterward. Nor was there any agreement of *Darling* to such a course — and if there had been the oath would have been extra-judicial.

Again, that adjudication that *Todd* was trustee is not binding upon *Darling*, because the notes given by *Todd* to *Darling* upon which *Todd* was holden as trustee were not due at the time. If in a trustee suit part of the debt of the trustee be then *due* and a

part not, perhaps the suit may be continued until all is due. But if the plaintiff take judgment before, he can only have judgment for what is due at that time. *Frothingham* v. *Haley*, 3 *Mass.* 68; *Clark* v. *Brown*, 14 *Mass.* 271.

The judgments in favor of *Cook* and *Samuel Darling* ought not to have been allowed to the administratrix as a set-off. She should have opposed the allowance of these claims before the commissioners, which might have been done successfully. There was no *debt* due from the intestate to *Cook* and *S. Darling*. The statute of foreign attachment creates a lien only. This lien is dissolved by the death of the trustee after judgment against him on disclosure, and before judgment against him and *his own goods*. Hence the rule that an executor or administrator are not chargeable as trustees. *Barnes* v. *Treat*, 7 *Mass.* 271; *Brooks* v. *Cook*, 8 *Mass.* 246; *Piquet* v. *Swan*, 4 *Mason*, 454.

The claim being but a lien is dissolved by the representation of *insolvency.* This is true with regard to the attachments of those who are real creditors, and the lien created by the trustee process is certainly not of a higher nature than that created by the attachment law.

To allow this assumed creditor, to share the estate with the real creditors would interfere with, and indeed be directly repugnant to *stat.* of 1821, *ch.* 51, regulating the distribution of insolvent estates " to and among all the creditors, *in proportion to the sums to them respectively due and owing.*" There was no " debt due and owing" from the intestate to the summoning creditor.

The *scire facias* suits should also have been defended. No action lies against an administrator after the intestate is represented insolvent and commissioners appointed, although it may ultimately prove to be solvent. *Paine Judge* v. *Nichols*, 15 *Mass.* 264; *Ellsworth* v. *Thayer*, 4 *Pick.* 122; *Johnson* v. *Ames*, 6 *Pick.* 330.

The administratrix might have pleaded in abatement and defeated the suits. *Moore* v. *Eames*, 15 *Mass.* 312; *Maine stat. ch.* 51, *sec.* 25.

The administratrix is not embraced within the provisions of *stat.* of 1821, *ch.* 61, *sec.* 14. Executors and administrators are only made liable where the death of the trustee takes place *before* final judgment against the principal.

*Greenleaf*, for the defendant in review, in support of the disclosure of the trustee and judgment thereon cited *Davis* v. *Ham*, 3 *Mass.* 63; *Staples* v. *Staples and Tr.* 4 *Greenl.* 532. And as to the proceedings in the Court of Probate, and on the suits of *scire facias*, *Maine stat. ch.* 61, sec. 14; *Parkman* v. *Osgood*, 3 *Greenl.* 17.

The opinion of the Court was, at a subsequent term, delivered by WESTON J.

An objection is taken to the original disclosure of the trustee; it being made not in court, but before a justice of the peace, which it is insisted was not then authorized by law. Whatever might have been the force of this objection, if made seasonably before the trustee judgment, and even admitting the judgment to have been erroneous, it remains in force, until reversed upon writ of error. It is a collateral judgment, incidental to a suit at common law, and can be vacated or avoided only by the same process, which would reverse the principal judgment. *Crockett et al.* v. *Ross et ux.* 5 *Greenl.* 443. The debt attached at the suit of *Foster* was absolute, although payable at a day then future. A lien was created upon that debt by that attachment, to the amount of the judgment rendered in favor of *Foster*, which the trustee has discharged. This sum therefore was rightfully allowed to the plaintiff in review at the trial.

It is contended that the trustee judgments, in favor of *Zebedee Cook* and of *Samuel Darling* ought not to be allowed to the plaintiff in review, upon the ground, first, that they could never have been enforced against the estate of the trustee, or secondly, that they have been barred by lapse of time. By the fourteenth section of the act concerning foreign attachment, revised laws, *ch.* 61, provision is made to enforce the attachment against the estate of the trustee, if he die either before or after his examination. This, it is urged, is limited to cases where, at the decease of the trustee, judgment had not been rendered against the principal defendant. But no such limitation is to be found in the section, if the trustee die before his examination, which happened in the judgments in question. His executor or administrator may in that case be cited, pending the original suit. Or if the trustee die

after judgment, they may be called in upon scire facias; and this we are satisfied is the true construction of the statute.

No original action can be maintained against the administrator, after the estate of his intestate is represented insolvent, and commissioners of insolvency are appointed. It is insisted that the administratrix might and ought to have pleaded these facts in abatement. If it was competent by law for her to have taken this course, the lien created by the original trustee judgment would have been entirely dissolved. The fourteenth section of the law concerning foreign attachment, before cited, contains no exception in regard to insolvent estates. And in all the cases there contemplated, a scire facias is necessary to make the attachment effectual. The policy of the law for the settlement and distribution of insolvent estates, does not require such an exception. If goods or chattels are specifically entrusted to the deceased, there is no reason why they should be administered as a part of his estate. The duty of the executor or administrator will be discharged by surrendering them upon the execution. If a debt be due from the deceased, the attaching creditor is substituted for his own. His estate is not impaired, nor his other creditors injured. On a suggestion upon the record of the insolvency of his estate, no execution will issue upon the judgment rendered on the scire facias, but that judgment will be added to the list of claims against the estate, in order to participate in the dividend. To all interested, it is a matter of indifference whether it is allowed to the original, or to the substituted, creditor. The same course is pursued, where an action is commenced prior to the decease of the insolvent debtor, and prosecuted to judgment afterwards. In that case a special attachment is dissolved by law, because it could not be sustained without prejudice to the other creditors. But they are not prejudiced by allowing to a creditor the same dividend, to which his debtor would otherwise have been entitled.

The administratrix could not have pleaded the insolvency in abatement of the scire facias. It was not an original action, but an incident to, and a continuation of, the former suit. This has been decided in the case of *Adams* v. *Rowe, infra.*

The Court of Probate, in cases of insolvency, is to allow six months, and further time not exceeding eighteen months in the

whole, to creditors to bring in and prove their claims. In this period, the time between the termination of one commission and the issuing of another, is not to be reckoned. It is no part of the time in which creditors may prove their claims, which can be done only while the commission is open. But in order to give effect to the limitation of four years for the protection of the estate, the commission ought not to be opened after that limitation has attached. *Parkman* v. *Osgood et als.* 3 *Greenl.* 17.

The administratrix, in the case before us, gave notice of her acceptance of the trust in *February*, 1829. Before the termination of four years from that time, the commissioners to receive and examine the claims of creditors against the estate of her intestate, had allowed the amount of the judgments in favor of *Zebedee Cook* and *Samuel Darling*, and they had also obtained judgments against her as administratrix, upon scire facias. These judgments therefore we are of opinion were properly allowed to the plaintiff in review; it being agreed that what has taken place since the last term, upon the suits on scire facias, and in the probate office, are to be considered as evidence in the case, as if it had existed and been offered at the trial.*

*Judgment on the verdict.*

* The facts occuring between *June* term, 1832, and *June* term, 1833, above alluded to by the Court, the Reporter has incorporated into the statement of the case without distinguishing them from those proved at the trial, in accordance with the spirit of the agreement between the parties.